THEIDA SALAZAR SBN: 295547
LAW OFFICES OF THEIDA SALAZAR
2140 North Hollywood Way  #7192
Burbank, California 91510
P: (818) 433-7290
F: (818) 436-4009
E: salazarlawgroup@gmail.com

*Attorney for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELGIN BANKS, an Individual; NATALIE EPSTEIN, an Individual; BRANDY FLOWERS, an Individual; CYNTHIA VASSOR, an Individual and AUBREY KELLY, an Individual, <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN AIRLINES GROUP, INC. dba AMERICAN AIRLINES, a Delaware Corporation; DOE DEFENDANTS 1-20, inclusive, <br><br> Defendants. | **Case No.: 2:20-cv-05495 MCS-GJS** <br><br> **[REDLINE]** <br> **FOURTH AMENDED COMPLAINT** <br><br> 1. RACE DISCRIMINATION AND <br> 2. NEGLIGENCE <br><br> JURY TRIAL REQUESTED |

COMES NOW, Plaintiffs, ELGIN BANKS, AUBREY KELLY, NATALIE EPSTEIN, BRANDY FLOWERS AND CYNTHIA VASSOR by and through undersigned counsel and in support complains, alleges and avers a Third Amended Complaint as follows:

4AC ENBCA COMP REDLINE| 1

**JURISDICTION AND VENUE**

1. This is a civil complaint brought in United States District Court under Federal and California state statutes prohibiting discrimination in order to secure protection and redress deprivation of rights under these laws.

2. Plaintiffs' statutory claims arise under including but not limited to Title VII of the Civil Rights Acts of 1964 ("Title VII"), as amended and codified as, 42 U.S.C. §2000e-2 et seq.

3. The jurisdiction of this Court is invoked under 28 U.S.C. §1332.

4. This action, also, includes two claims arising out of California state law, which is joined pursuant to the doctrine of supplemental jurisdiction and 28 U.S.C. §1367(a). Plaintiffs assert they endured either disparate treatment, race discrimination, or retaliation due to race as well as complaining of said race discrimination which is strictly prohibited by the Civil Rights Acts of 1964 ("Title VII").

5. Jurisdiction in this case is also proper pursuant to California Government Code §8315.

6. This Court has jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. §1367(a).

7. During the relevant time period, Defendant, AMERICAN AIRLINES GROUP, INC. (hereinafter referred to as "American") is a Delaware Corporation operating within the County of Los Angles, State of California and employing persons within the State of California.

8. Venue is proper in the District of California pursuant to 28 U.S.C. §1391(b) because the claimed unlawful discrimination practices were committed in and arose in the District of California. Further, the venue is, also, proper Code of Civil Procedure §395(a).

9. The amount in controversy in this matter exceeds the sum of $75,000, exclusive of interest and costs.

## PARTIES

10. Plaintiff, ELGIN BANKS is an individual and is now, and at all times mentioned in this Complaint was an out of state resident onboard American Airlines Flight 1931 departing Los Angeles International Airport.

11. Plaintiff, NATALIE EPSTIEN is an individual and is now, and at all times mentioned in this Complaint was a resident of the State of California onboard American Airlines Flight 1931 departing Los Angeles International Airport.

12. Plaintiff, BRANDY FLOWERS is an individual and is now, and at all times mentioned in this Complaint was an out of state resident onboard American Airlines Flight 1931 departing Los Angeles International Airport.

13. Plaintiff, CYNTHIA VASSOR is an individual and is now, and at all times mentioned in this Complaint was an out of state resident onboard American Airlines Flight 1931 departing Los Angeles International Airport.

14. Plaintiff, AUBREY KELLY is an individual and is now, and at all times mentioned in this Complaint was a resident of the State of California onboard American Airlines Flight 1931 departing Los Angeles International Airport.

15. Defendant, AMERICAN AIRLINES GROUP, INC. dba AMERICAN AIRLINES ("American") is a California Corporation, and at all times mentioned in this Complaint owns and operates said business in Los Angeles County, California.

16. Plaintiffs sue DOES 1 through 20, inclusive, herein under fictitious names. Plaintiffs do not know their true names and capacities. When Plaintiffs ascertain the DOE Defendants' true names and capacities, Plaintiffs will amend this Complaint by inserting their true names and capacities. Plaintiffs are informed and believes, and on the basis of that information and belief alleges each Defendant named herein as a DOE acted with the other defendants and is responsible for the damages to Plaintiffs herein alleged. Each reference in this Complaint to Defendants, or to any of them, also refers to all Defendants sued under fictitious names.

17. Plaintiffs are informed and believes, and on the basis of that information and belief alleges each of the Defendants sued herein are the agents, servants, employees, licensees, guarantees, invitees, or assignees of each other, and in doing the things herein alleged acted within the course and scope of such agency, employment guaranty, assignment, license, invitation and/or relationship and with the full knowledge and consent of the other.

18. At all relevant times mentioned herein, Defendants aided and abetted the acts and omissions of the other Defendants in proximately causing the damages alleged herein.

## FACTUAL ALLEGATIONS

19. This case is a pervasive discrimination case whereby Defendant reprehensibly and repetitively violated several well established discrimination laws.

20. There are two well-known principles in this nation: (1) customer service and civility are necessary for positive human interactions and (2) no person should be denied the right to any public accommodation because of discrimination and retaliation.

21. Unfortunately, this is a case of the vice versa of these two basic principles.

22. This matter pertains to the American Airlines Flight 1931 ("Flight 1931") departing Los Angles California on Sunday, May 31, 2020 around 7:45pm routed to arrive in Phoenix, Arizona.

23. Furthermore, Plaintiffs, Elgin Banks, Natalie Epstein, Brandy Flowers, Cynthia Vassor and Aubrey Kelly were all onboard for American Flight 1931.

24. Elgin Banks is an African-American male.

25. Natalie Epstein is a Caucasian female.

26. Brandy Flowers is an African-American female.

27. Cynthia Vassor is an African-American female.

28. Aubrey Kelly is an African-American male.

29. Well known to the entire country, Flight 1931 was taking off to Arizona during a very contentious and concerning time given the existence of COVID-19 and the murder of George Floyd.

30. Elgin is a mild-mannered, gentle African-American man that was simply on the flight to return back home after staying in Los Angeles for a few weeks with his family for bereavement purposes.

31. Aubrey is also an African-American male of mild temperament that is very respectful and a third year medical student at UCLA.

32. Plaintiffs, Natalie, Brandy and Cynthia were also onboard Flight 1931 returning to Phoenix, Arizona.

33. As the Plaintiffs boarded Flight 1931, each Plaintiff anticipated a relaxing safe experience however that did not occur on May 31, 2020.

34. Flight 1931 quickly became a horrendous racially discriminatory situation.

35. That American racially discriminated against Aubrey prior to his boarding by unnecessarily forcing Aubrey to check his carry-on bag without any justifiable or legal reasoning to do so; there was room for carry-ons on Flight 1931 and Aubrey's bag was compiled to the proper sizing for the carry-on; thus the refusal was racially motivated from the outset. *Exhibit 2 – pg. 1 ¶1 Aubrey Declaration*

36. That once onboard Flight 1931 Plaintiffs engaged in a serious discrimination and retaliation situation.

37. As Elgin boarded Flight 1931, he politely requested if the flight was full and if he could change seats if open seats where available; an American flight attendant assured that he could change seats when the pilot states that "boarding is complete". *Exhibit 1 – pg. 1 ¶2 Elgin Declaration*

38. Abiding by the statement conveyed to him, Elgin waited for the pilot's announcement that the boarding was complete. *Exhibit 1 – pg. 1 ¶¶2-3 Elgin Declaration*

39. Given the prior communication with the flight attendant staff member, once the pilot stated boarding was complete, several non-African American Caucasian passengers changed seats freely. *Exhibit 1 – pg. 1 ¶¶2-3 Elgin Declaration*

40. Recognizing that he now had the opportunity to change seats, Elgin requested permission from the Caucasian flight attendant to get the closer empty seat that was few rows ahead of his seat of the airplane. *Exhibit 1 – pg. 1 ¶¶2-3 Elgin Declaration*

41. Elgin specifically stated, "excuse me, I asked for a seat earlier and I see you moving people so I wanted to know if I could get a closer seat." *Exhibit 1 – pg. 1 ¶¶2-3 Elgin Declaration*

42. The flight attendant replied "sir, step back", in an aggressive and rudely intimidating tone. Elgin replied, "okay ma'am, all I was asking is if I could get a seat closer to the front." Moreover, Elgin was not in close proximity to the flight attendant at any time. *Exhibit 1 – pg. 1 ¶¶2-3 Elgin Declaration*

43. The flight attendant then responded "sir, you don't have to raise your voice" then Elgin replied, "I didn't raise my voice ma'am; I was just asking if I could get a seat closer." *Exhibit 1 – pg. 1 ¶¶2-3 Elgin Declaration*

44. Despite Elgin's respectful and humbled request, the flight attendant responded with a vile demeanor and rudely and in an agitated and overtly aggressive tone stated "sir go sit down," as if Elgin was a misbehaved child. *Exhibit 1 – pg. 1 ¶¶2-3 Elgin Declaration*

45. Elgin, in an effort to diffuse and resist stirring a prolong dispute, humbly returned to his original seat. *Exhibit 1 – pg. 1 ¶¶2-3 Elgin Declaration*

46. Thereafter, despite Elgin's compliance with her demand, the supervising flight attendant called airport security as well as airport police and conveniently after causing this demeaning situation disappeared from the incident. *Exhibit 1 – pg. 2 ¶1 Elgin Declaration*

47. Needless to say, subsequently, airline security came upon the plane and forced Elgin to exit the plane, despite the overt statements of passengers that Elgin did nothing wrong in the situation. *Exhibit 1 – pg. 2 ¶1 Elgin Declaration*

48. In solidarity to the racial discrimination presented before them, Plaintiffs, Aubrey, Natalie, Brandy and Cynthia were escorted off as well as each of them were witnesses advocating for Elgin. *Exhibits 1-5*

49. Furthermore, appallingly when exiting the plane Plaintiffs were greeted by approximately 20 police offices as if they were criminals. (*Exhibit 1 – pg. 2 ¶1 Elgin Declaration*

50. To add insult to injury, the fleeing supervising flight attendant, subsequently made ridiculous false statements about what occurred on Flight 1931, including but not limited to the misrepresentation that Elgin was trying to sit in first class, which was a perjurious lie. *Exhibit 1 – pg. 2 ¶2 Elgin Declaration*

51. Most egregiously, the flight was cancelled and American offered accommodations for the Caucasian customers yet for the African-American who were also escorted off because of their solidarity against discrimination American denied said offered accommodations. *Exhibit 3 – pg. 3 ¶1 Natalie Declaration*

52. Plaintiffs' vehemently protested with American staff and were immediately thereafter surrounded by officers who informed them they must leave the airport as they were no longer ticketed passengers.

53. The fact that law enforcement and security, in the process of ejecting Plaintiffs from the airport, made the statement to Cynthia and other Plaintiffs, "[w]hy would you want to fly with an airline that doesn't want you on their plane?" that remark in and of itself provides further sufficient evidence of the racial discrimination in this case. *Exhibit 6 – pg. 1 ¶3 Cynthia Declaration*

54. Most importantly, the ban and the denial of accommodations was order by the American Airlines Corporate Office in Texas. *Exhibit 6 – pg. 1 ¶2 Cynthia Declaration*

55. Even more disgustingly, American had the audacity to claim all of the Plaintiffs' were banned from travel on its airline which further demonstrated the racial discrimination alleged herein.

56. Subsequently thereafter, the non-African-American Plaintiff, Natalie, and other Caucasians received emailed hotel vouchers, but the African-American plaintiffs did not received a voucher or any communication which is further evidentiary support of the disparate treatment that persisted throughout this ordeal.

57. It is clear that Elgin did nothing wrong in this instance; he did not violate any law, airline policy nor FAA policy during this incident. (see Exhibit 1- Elgin's Declaration)

58. It is clear that none of the Plaintiffs effectuated any wrongdoing in this instance; nor did they violate any law, airline policy or FAA policy at any time during this incident. (see Exhibit 1-5 Declarations of Each Plaintiff)

59. Thus, in order to receive recompense and true justice, Plaintiffs are filing this lawsuit.

## FIRST CAUSE OF ACTION
### RACE DISCRIMINATION
**(Elgin and Aubrey Against Defendant)**

60. Plaintiffs refer to and incorporate the factual allegations set forth in paragraphs one (1) through fifty-seven (57) fifty-nine (59) above as though fully set forth hereafter.

61. Civil Rights Law codified as 42 U.S.C. §1981 states, "***[a]ll persons*** within the jurisdiction of the United States shall ***have the same right*** in every State and Territory to make and enforce contracts, ***to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens***, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." (bolded and italicized for emphasis)

62. Further, "[t]o state a § 1981 claim, a plaintiff must plead "(1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerns one or more of the activities enumerated in the statute." *Keum v. Virgin Am., Inc.*, (2011) 781 F. Supp. 2d 944, 954.

63. Essentially, discrimination, normally, requires the simple elements that a Defendant subjecting a citizen of a different race to disparate benefits than white citizens.

64. In this case American violated by intentionally purposefully allowing race discrimination on Flight 1931.

65. American is the owner of the airplane and employer of all staff on Flight 1931.

66. The Caucasian flight attendant was and possibly still is an employee of American.

67. That Elgin and Aubrey were African American men on Flight 1931.

68. It is clear that based upon the above-referenced facts, that American and its staff subjected Elgin and Aubrey to constant racially motivated harassment, disparate treatment and adverse discriminatory situations.

**Aubrey's Racial Profiling and Discrimination** *Exhibit 2* – pg. 1 ¶1 Aubrey Declaration

69. That Aubrey states that he witnessed and endured race discrimination is solely based upon the overt disparate treatment on Flight 1931.

70. That Aubrey is an African-American male.

71. That, in declaration, Aubrey states and surmises that he was being treated disparately while interacting with American, its management, employees and staff.

72. That Aubrey specifically states there was an unjustifiable checking of his carry-on luggage for these reasons: *Exhibit 2* – pg. 1 ¶1 Aubrey Declaration
    (1) Aubrey bought TSA certified carry-on luggage;
    (2) Aubrey's carry-on luggage fit the measurement box;
    (3) Aubrey saw Caucasians with similar carryon baggage that were not subject to any review or forced to be checked by American;
    (4) Most appalling, American's attending staff admitted there was room in the overhead for carry-on bags and
    (5) Despite the carry-on bag meeting the requirements, American staff forced Aubrey to unjustifiably check his bag.

73. These five acts are abhorrently wrong and demonstrates the intent to discriminate and carrying out of the same because said acts prevented Aubrey from having the same

benefits to have a carry-on in the overhead as the "white citizens" who were allowed to freely enter the Flight 1931 with carry-on luggage.

74. Aubrey endured an adverse racially motivated discriminatory situation when American refused to allow him to take a carry-on bag for Flight 1931 despite the fact that Aubrey observed many Caucasian passengers freely taking their carry-ons on the plane.

75. Aubrey states in his declaration he was denied the benefit to have his carry-on bag onboard Flight 1931.

76. Aubrey did not have the equal benefit of Caucasian citizens with the blatant denial to allow him to have his TSA certified carry-on baggage onboard Flight 1931.

77. It is clear due to acts and exercises of racially profiling and pure race discrimination intentions demonstrated by disparate treatment; it is clear Aubrey was denied equal benefit.

78. Moreover, Aubrey states that after being deplaned he observed that Natalie and Fisher, both, Caucasians received flight rebooking, overnight hotel stay and a meal voucher via email yet the four African-American passengers, including Aubrey, on the Flight 1931, were denied said opportunities and vouchers which further increased the level of race discrimination.

79. Notably, the end of Aubrey's declaration American Airlines failed to respond "American Airlines regarding the racist, discriminatory and bigotry I experienced." *Exhibit 2* – pg. 2 ¶8 Aubrey Declaration

**Elgin's Racial Profiling and Discrimination** *Exhibit 1* – pg. 1-2 Elgin Declaration

80. Elgin endured adverse racial discrimination when he was unjustifiably escorted off Flight 1931 simply because he requested the same right and the same change of seat that many Caucasian passengers received with no hesitation or arguments from the flight attendant.

81. That Elgin is an African American male.

82. That Elgin upon boarding inquired with a steward about changing seats; said steward replied yes, after Flight 1931 is boarded and everyone were in their seats. *Exhibit 1 – pg. 1 ¶2 Elgin Declaration*

83. That, as stated in the declaration, after the pilot announced complete boarding, Elgin observed and witnessed the supervising flight attendant allowing Caucasians to freely move and change seats as well as Caucasian woman requesting a seat exchange that was freely given to said woman. *Exhibit 1 – pg. 1 ¶2 Elgin Declaration*

84. After his observation, Elgin, meekly, stood and moved forward maybe three rows within the coach section and politely in humility requested to change seats. *Exhibit 1 – pg. 1 ¶2 Elgin Declaration*

85. That, unexpectedly, the supervising flight attendant lashed out while Elgin requested the seat exchange for an open, vacant and unoccupied seat in the coach section; especially given seeing numerous Caucasian passengers receiving the ability to do exchange seats. *Exhibit 1 – pg. 1 ¶2 Elgin Declaration*

86. That the supervising flight attendant aggressively responded and then maliciously reprimanded Elgin whereby supervising flight attendant demanded that Elgin return to his seat by shouting loudly stating "sir go sit down" in a very degrading, demeaning and unacceptable tone. *Exhibit 1 – pg. 1 ¶2 Elgin Declaration*

87. That despite the crude and malicious action, in order to diffuse the situation, Elgin promptly returned to his original seat. Of course at this point and time Elgin believes that peacefully listening and returning to his seat the issue is resolved and he is in compliance with the supervising flight attendant despite the unjustifiable unfairness.

88. Unfortunately that was untrue, the supervisor flight attendant unnecessarily called American security to remove Elgin for not known apparent reason other than the instigated argument that resulted with Elgin humbly complying.

89. To provide a rub in Elgin's eye, he was deplaned and banned from American's airline because of the normal process of exchange to an open and vacant seat. *Exhibit 1 – pg. 1 ¶3 and pg.2 ¶1 Elgin Declaration*

90. That this act is akin to days prior to the Civil Rights Movement when African-Americans were forced to sit and stay on the back of the bus, now African-Americans are being force to remain in their seats in the back negated of the "white privilege" yet again.

91. Elgin did not have the equal benefit of "white citizens" when he was denied the benefit of exchanging his seat while witnessing Caucasians freely moving to different closer seats.

92. Elgin states in his declaration he was denied the benefit to exchange seats while onboard Flight 1931.

93. Elgin did not have the equal benefit as that of Caucasian citizens with the blatant denial to allow him change his seat while onboard Flight 193.

94. It is clear due to acts and exercises of racially profiling and pure race discrimination intentions demonstrated by disparate treatment; it is clear Elgin was denied equal benefit.

95. Aubrey, an African American passenger, in declaration, specifically states, "on May 31, 2020, I was a passenger on a flight from LAX to Phoenix when I observed the racial profiling of a black man, Mr. Elgin Banks. I witnessed a white flight attendant scream at Mr. Banks as she felt threatened by his skin color and perceived close proximity. Not only was he not in close proximity, but he was denied his request to move up to an open seat (said request was granted to white passengers)" *Exhibit 2 – pg.1 ¶1 Aubrey Declaration*

96. More specifically, Elgin states in his declaration, specifies the discriminating incident, "there was no truth in the statements of the F.A. and she disappeared after she told untrue statements and misrepresented the facts and lied regarding our interaction. I was embarrassed because I was escorted off the plane solely on the bias and bigotry of the racist F.A., and the truth was never investigated nor was any diligence or due process exhibited whatsoever. It was the F.A.'s word, against not one but several passengers (who did not know each other)" *Exhibit* 1 – pg. 1 ¶3 and pg.2 ¶1 Elgin Declaration

97. Furthermore, Elgin states, "I am reluctant to fly as I know fear my skin color will get me ejected, and maybe next time, I will not be as lucky when encountering the numerous officers the airline summoned without cause." *Exhibit 1* –pg.2 ¶3 Elgin Declaration  This statement is a statement that every African American male has on a regular day to day basis which is terrible and unjustifiable; this is evidence of physical and mental race discrimination.

98. Additionally, Elgin was also denied the given accommodations and vouchers like the other Caucasian passengers.

99. Both Audrey and Elgin sate facts that stand firm that the discrimination they each endured was intolerable and unjustifiable because the Defendants fail to proffer any true reasoning for these actions.

100. Most abhorrently, this phrase "he/she made me uncomfortable" is an acceptable reason to perpetrate racism, hostility and discrimination which is now just a simple coded way to assert I have an issue with African-Americans; this is wholly unacceptable in general but it is definitely unacceptable for any service provider because it unprofessional, unlawful, unjustifiable, despicable and wholly disrespectful to the entire African-American race.

101. Here, it was clear that American and its staff egregiously and despicably treated Elgin and Aubrey disparately because of the color of their skin.  Elgin and Aubrey's race was the substantial motivating reason for American's discriminatory conduct.

102. Additionally, despite, knowing about these said despicable verbal interactions, American never took any action regarding the same thus bolstering the harm to the Elgin and Aubrey.

103. In fact, Elgin and Aubrey were never presented to have the ability to address or file a complaint about American and its staff abhorrent conduct.  This, any notice regarding this case is supported by the news and social media reporting of this situation and this case.

104. Thus, Defendant acts and omissions were the substantial factor of the race discriminatory harm that Aubrey and Elgin endured in this matter.

105. In this case, Elgin and Aubrey were harmed emotionally as well as physically. The verbal abuse and abusive caused detrimental harm to Aubrey and Elgin.

106. Elgin and Aubrey experiences and endures actual damages in an amount subject to proof at trial.

107. Defendants' actions are intentional and done with willful disregard for the well-established and well-known legal rights of Elgin and Aubrey.

108. Plaintiffs had to engage the services of attorneys to represent him in this matter and is entitled to an award of reasonable attorney's fees.

## SECOND CAUSE OF ACTION
### NEGLIGENCE

109. Plaintiffs refer to and incorporate the factual allegations set forth in paragraphs one (1) through ~~seventy-six (76)~~ one hundred and eight (108) above as though fully set forth hereafter.

110. *California Civil Code section 1714(a)*, states: "[e]veryone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person."

111. Furthermore, pursuant to California Civil Code §2103 ("Cal. Civ. Code §2103), "[a] carrier or persons for reward must give to passengers all such accommodations as are usual and reasonable, and must treat them with civility, and give them a reasonable degree of attention."

112. That Cal. Civ. Code §2103 mandates that American has a duty, due to ticket cost must give Plaintiffs usual and reasonable accommodations, treat said persons with civility and give a reasonable attention.

113. That American and its employees and staff failed to adhere to the elements of Cal. Civ. Code §2103 and simple morality.

114. That each Plaintiff paid for a ticket to have safe and civil transportation from Los Angeles, California to Arizona.

115. That American failed and breached the duty to provide reasonable accommodation, civility and reasonable attention.

116. American failed all three of these requirements for these reasons:
    1. American supervising flight attendant instigated and then had the audacity to relentlessly restate and prolong a resolved matter.
    2. American and its staff failed to provide reasonable flight accommodation when the supervising stewardess was yelling and demeaning Elgin
    3. American and its staff failed to treat Plaintiffs with civility when Plaintiffs were calmly stating the facts that occurred on Flight 1931.
    4. Plaintiffs all witnessed American and its staff pervasive discrimination that was truly disturbing for each Plaintiff.
    5. American completed ignored five and more passengers attempting to speak the truth regarding the situation on Flight 1931.
    6. American, the corporation and staff negligently dismissed the Plaintiffs' complaint
    7. Then American corporate in Texas banned Plaintiffs from American Airlines based upon the untruths and lies of the supervising flight attendant further substantiating the overt racial discrimination.

117. American negligently infringing acts such as:
    1. Forced checking of Aubrey carry-on bag;
    2. American flight attendant yelling and demeaning Elgin on board Flight 1931;
    3. American's supervising flight attendant upright slandering Plaintiffs;
    4. American's supervising flight attendant blatantly lying;
    5. American corporate banning the African-American Plaintiffs;
    6. American corporate providing for Caucasian passengers with civility yet failing to do the same for African-American passengers;
    7. The refusal to allow Plaintiffs file a complaint and
    8. The upright refusal to give the Plaintiffs five minutes of time

118. That the declarations provided by each Plaintiff demonstrates and indicates that there was pervasive negligent discrimination and maltreatment conducted on Flight 1931.

119. Each Plaintiff enumerates and describes their individual Flight 1931 experience:

1. That Elgin states, "I was embarrassed because I was escorted off the plane solely on the bias and bigotry of the racist F.A., and the truth was never investigated nor was any diligence or due process exhibited whatsoever. It was the F.A.'s word, against not one but several passengers (who did not know each other) who were all in agreement I did nothing wrong. Yet and still I was ejected from the flight, hurt, and embarrassed. Moreover, I am reluctant to fly as I know fear my skin color will get me ejected, and maybe next time, I will not be as lucky when encountering the numerous officers the airline summoned without cause. The serenity of returning home has been taken from me as now I do not feel like home is a sanctuary based upon American Airlines and its F.A's discriminatory practices, protocol, and racist culture effectuated to harass passengers based on their race." *Exhibit 2* – pg. 2 ¶2-3 Elgin's Declaration

2. Aubrey states "[t]o this day I have not been reimbursed for the flight nor have I been contacted by Anthony Emma or spoken to any rep from American Airlines regarding the racist, discriminatory and bigotry I experienced." *Exhibit* 3 – pg. 2 ¶8 Aubrey Declaration

3. Natalie expresses "[t]he amount of physical danger and exhaustion, as well as the financial burden, I endured as a result of this encounter with American was not great, and I do not believe Elgin or any of us deserved this horrific treatment from American Airlines, all because we saw injustice happening and spoke up." *Exhibit 4* – pg. 3 ¶2 Natalie Epstein

4. Brandy plainly states, "[o]verall, it was a twelve-hour trip that followed the most despicable, heinous and cruel form of racism and bigotry I have ever experienced in my life." *Exhibit 5* – pg. 2 ¶2 Brandy Declaration

5. Cynthia remember and recounts, "[h]e replied "there is no written policy and that their policy is a judgement call". He then asked for all of our information as though he was going to rebook us a flight. I gave him my ID and boarding pass and he stated "we have been denied by corporate in Texas". The entire flight was eventually cancelled and everyone on the plane besides the 3 African-American

passengers who stuck by Mr. Banks was accommodated with an overnight hotel stay and a meal voucher. Even the 3 Caucasian passengers who refused to get off were accommodated." *Exhibit 6* – pg. 1 ¶2 Cynthia Declaration

120. It is clear that American owns American Airlines and employs each staff member on Flight 1931.

121. American hired the Caucasian flight attendant as an employee for American who was working on Flight 1931.

122. That Plaintiffs and each of them were American customers and passengers.

123. That American owed a duty a general duty of reasonable care as well as the reasonable accommodation for a non-hostile traveling environment and experience.

124. That American owed paying Plaintiffs reasonable accommodation and civility on Flight 1931.

125. Thus, American had a general duty of reasonable care owed to the Plaintiffs during their travel on Flight 1931.

126. That American had a legal obligation to provide an amicable and civil traveling environment and experience without blatant intolerant discriminatory behavior.

127. That American had a duty to use due care in facilitating the operations, conduct and acts so as not cause injury to others.

128. Furthermore, American failed to meet that duty. Among other things, Defendant failed to protect Plaintiffs from emotional and financial harms.

129. Harm to the Plaintiffs was a foreseeable.

130. However, American, breached the duty of care owed to the Plaintiffs when American consistently verbally attacked Plaintiffs, removed Plaintiffs from Flight 1931 as well as the atrocious act of banning and failing to provide any accommodations to the Plaintiffs.

131. That American failed to use reasonable care by failing to prevent the discrimination on Flight 1931.

132. That American given the circumstances, used unreasonable conduct by inappropriately escorting Plaintiffs off the plane then unjustifiably issues a ban from American to each Plaintiff.

133. As stated herein, Plaintiffs, and each of them, are direct victims of American's negligent conduct. Plaintiffs were all onboard Flight 1931 at the time the pervasive discriminatory event as attested and aforementioned. (*Exhibits* 1-5)

134. Plaintiffs each witnessed blatant discriminatory situations that caused insurmountable distressing emotions which caused them to speak out about the obvious injustice and the unscrupulous actions causing them great distress, especially upon hearing they were banned by American.

135. It is outstandingly clear that American, its' employees and staff members completed failed in their duties thus causing overt and extreme distress for all of the Plaintiffs.

136. Due to the negligent conduct of American, Plaintiffs have and continue to endure constant stress due to the Defendant's pervasive negligence in this matter.

137. Negligent conduct of American, its' employees and staff members by subjecting Plaintiffs to extensive discrimination was outrageous and done in the presence of Plaintiffs and other passengers thus causing Plaintiffs' emotional distress.

138. American acted with reckless disregard and outright unconsciousness regarding the fact that Plaintiffs would suffer increased distress after witnessing malicious discrimination on Flight 1931.

139. In this case, American, its employees and staff members acted negligibly and in reckless disregard of the probability that Plaintiffs would suffer emotional distress.

140. American, its employees and staff members' conduct was a substantial factor in causing Plaintiffs emotional distress.

141. American, its employees and staff members' conduct was the proximate cause of Plaintiffs being negligently harmed and suffering injuries.

142. As a further proximate result of the conduct of American, its employees and staff members' conduct, Plaintiffs have been damaged thereby.

143. That each Plaintiff incurred physical and mental damages from American and its staff's acts and omissions in this matter.

144. That Plaintiffs suffered financially and emotionally after the terrifying racist experiences they, each, endured on Flight 1931.

145. As a direct and proximate result of Defendant's conduct, Plaintiffs suffered general damages in an amount to be determined by proof at trial.

146. Defendant acted maliciously and oppressively negligent, in reckless and careless disregard of Plaintiffs rights and safe negligently causing to harm Plaintiffs.

147. As a result of Defendant's negligent infliction of emotional distress, Plaintiffs have been damaged and have suffered damages in an amount in excess of $75,000.00.

**WHEREFORE**, Plaintiffs, each, pray for judgment against Defendant American Airline, and each of them as follows:

1. For general damages according to proof;
2. For medical and related expenses according to proof;
3. For prejudgment interest;
4. For post judgment interest;
5. For costs of suits incurred herein; and
6. For such other and further relief as the Court may deem just and proper.

Respectfully Submitted,

DATED this day 12<u>th</u> March, 2021.

/s/ Theida Salazar
**THEIDA SALAZAR SBN: 295547**
**LAW OFFICES OF THEIDA SALAZAR**
E: salazarlawgroup@gmail.com
*Attorney for Plaintiffs*

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is **2140 N. Hollywood Way #7192 Burbank, CA 91510**.

On March 12th, 2021, I served the foregoing document described as **PLAINTIFFS' REDLINED FOURTH AMENDED COMPLAINT,** on interested parties in this action by personally serving a true and correct copy thereof addressed as follows:

## SEE ATTACHED MAILING LIST

[ X ]   (BY ELECTRONIC MAIL)

[ X ]   (FEDERAL) I declare that I am employed in the office of a member of the bar of this court at whose direction service was made.

                                                    /s/ Theida Salazar
                                                    Theida Salazar, Esq.

## SERVICE LIST

TO:   **Sarena Kustic**
**WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP**
401 West A Street Suite 1900
San Diego, CA 92101
619.321.6200 (Main)
619.321.6201 (Fax)
sarena.kustic@wilsonelser.com
*Attorney for Defendant, American Airlines*